**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF GEORGIA**
**COLUMBUS DIVISION**

| | | |
|---|---|---|
| CHATTAHOOCHEE RIVERKEEPER, INC., | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action File No. 4:26-cv-00855-CDL |
| ASPIRE AT OLD GUARD, LLC; SCORUSA, LLC; and STEVEN W. CORBETT, | ) ) ) | |
| Defendants. | ) ) ) | |

**FIRST AMENDED COMPLAINT AND**
**PETITION FOR INJUNCTIVE RELIEF**

Pursuant to Federal Rule of Civil Procedure 15(a)(1) and the Local Rules of this Court, Plaintiff Chattahoochee Riverkeeper, Inc. ("CRK") files this First Amended Complaint against Defendants Aspire at Old Guard, LLC, SCorUSA, LLC, and Steven W. Corbett ("Defendants"), and shows the Court as follows:

**Nature of Action**

1.

This action is a citizen suit brought pursuant to section 505 of the Clean Water Act (the "CWA"), 33 U.S.C. § 1365(a), which provides a private right of action against any person, entity, or governmental instrumentality or agency

violating the CWA.

2.

Plaintiff seeks a declaratory judgment, injunctive relief, the imposition of civil penalties of $68,445 per day for each of the Defendants' violations of the CWA, and the award of attorney's fees and expenses of litigation, for the repeated and ongoing violations by Defendants of sections 301(a) and 402 of the CWA, 33 U.S.C. §§ 1311(a) and 1342. The Defendants' violations relate to their ownership, operation, and development of an approximately 25-acre apartment complex construction site located at 2010 Old Guard Road, Columbus, Georgia 31909 (the "Old Guard Road Site"), and include Defendants' destruction of the vegetative buffer of a stream and the unlawful and unpermitted discharge of pollutants into two unnamed tributaries to Heiferhorn Creek and downstream into Heiferhorn Creek, Standing Boy Creek, and the Chattahoochee River.

**Jurisdiction and Venue**

3.

The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 and 33 U.S.C. § 1365(a).

4.

Pursuant to 33 U.S.C. § 1365(b), CRK provided notice (the "Notice Letter"),

2

as required by the CWA, 33 U.S.C. § 1365(b)(1)(A), to Defendants of their violations of the CWA, and CRK's intention to file suit against the Defendants. A true and correct copy of the March 18, 2026 Notice Letter is attached as Exhibit 1 and copies of the Letter were also sent to the persons designated under the applicable regulation, 40 C.F.R. § 1365.

5.

More than sixty days have passed since notice of the violation was provided and the violations complained of are continuing or reasonably likely to continue.

6.

The CWA violations alleged herein occurred and will continue to occur in this district and venue is proper in this Court pursuant to 33 U.S.C. § 1365(c)(1) and 28 U.S.C. § 1391.

7.

The destruction of vegetative stream buffers and the unlawful discharges of pollutants alleged herein are ongoing violations of sections 301(a) and 402 of the CWA, 33 U.S.C. §§ 1311(a) and 1342. The violations will continue absent intervention by the Court.

3

**Parties**

8.

CRK is a nonprofit corporation organized under the laws of the State of Georgia with more than 10,000 members and offices in Atlanta, LaGrange, and Gainesville, Georgia. CRK's mission is to advocate and secure the protection and stewardship of the Chattahoochee River and its tributaries and watershed, in order to restore and conserve their ecological health for the people, fish and wildlife that depend on the river system.

9.

Aspire at Old Guard, LLC is a Georgia limited liability company and has been the owner of the Old Guard Road Site since February 19, 2025. Aspire at Old Guard, LLC is subject to the jurisdiction of this Court and can be served with summons and other legal process by personal service upon its registered agent, Dan Nibblett, 8204 Cooper Creek Road, Columbus, Georgia 31909.

10.

SCorUSA, LLC is a foreign limited liability company, and upon information and belief, owns and/or operates all or part of the Old Guard Road Site. SCorUSA, LLC is subject to the jurisdiction of this Court and can be served with a summons and other legal process by personal service upon its registered agent, Dan Nibblett,

4

8204 Cooper Creek Road, Columbus, Georgia 31909.

11.

Steven W. Corbett was the owner of the Old Guard Road Site from August 5, 2019 until February 19, 2025. At all times relevant to this matter, Mr. Corbett has personally directed and supervised the land-disturbing activities at the Old Guard Road Site, and upon information and belief, is an officer and/or owner of the Defendants Aspire at Old Guard, LLC and/or SCorUSA, LLC. Mr. Corbett is subject to the jurisdiction of this Court.

## **Standing**

12.

Defendants' ownership and operation of the Old Guard Road Site and resultant CWA violations have unlawfully and negatively impacted Heiferhorn Creek, the unnamed tributaries to Heiferhorn Creek, Standing Boy Creek, and the Chattahoochee River.

13.

The tributaries to the Chattahoochee River are a significant part of the Chattahoochee River system. CRK members recreate and fish in, on, and near Heiferhorn Creek, the unnamed tributaries to Heiferhorn Creek, Standing Boy Creek, and the Chattahoochee River downstream of the Defendants' discharge.

The quality of the Chattahoochee River system affects the recreational, aesthetic, and environmental interests of CRK's members.

14.

CRK members have suffered injuries in fact to their recreational, aesthetic and environmental interests due to the continued destruction of stream buffers and the discharge of rock, sand silt, and other pollutants into Heiferhorn Creek, the unnamed tributaries to Heiferhorn Creek, Standing Boy Creek, and the Chattahoochee River. In particular, the ability of CRK members to utilize such waterbodies for recreational activities has been adversely affected, among other ways, due to the siltation, the degradation of the water quality, and the destruction of aquatic life in the water bodies because the City of Columbus's Whitewater Park, which is utilized by more than 50,000 people annually for rafting and kayaking, is downstream of the Defendants' discharge.

15.

The injuries of CRK's members are directly traceable to Defendants' acts and omissions challenged herein.

16.

CRK members have been and continue to be injured in fact as a result of Defendants' acts and omissions and these injuries are likely to be redressed by the

requested relief. CRK's interest in this proceeding falls squarely within the zone of interests protected by the CWA.

## Law and Facts Common to All Counts

17.

In 1972, Congress passed the CWA, "to restore and maintain the chemical, physical, and biological integrity of the nations waters." 33 U.S.C. § 1251 (a).

18.

Section 301 of the CWA prohibits the discharge of pollutants into "waters of the United States" except in accordance with standards promulgated and permits issued under other sections of the CWA. 33 U.S.C. § 1311(a).

19.

The CWA makes it unlawful for any person to discharge from a point source in violation of a National Pollution Discharge Elimination System ("NPDES") permit. 33 U.S.C. § 1342.

20.

Under the NPDES, the EPA issues permits for the discharge of pollutants into waters of the United States where certain conditions are met. 33 U.S.C. § 1342. This permitting authority has been delegated to the Georgia Environmental Protection Division ("EPD") pursuant to 33 U.S.C. § 1342.

21.

The EPD issues NPDES permits to qualifying entities under authority granted by O.C.G.A. § 12-5-30.

22.

On August 1, 2000, the General NPDES Permit for Storm Water Discharges Associated with Construction Activity GAR100001 (the "General Permit") became effective in Georgia. The General Permit has been reissued on multiple occasions since that time and, among other things, requires owners and developers to file a notice of intent to be covered by the General Permit prior to commencement of land-disturbing activities.

23.

The CWA provides that any citizen may commence a civil action on his own behalf against any person who is alleged to be in violation of an effluent standard or limitation under the CWA. 33 U.S.C. § 1365(a)(1)(A).

24.

Heiferhorn Creek, the unnamed tributaries to Heiferhorn Creek, and Standing Boy Creek are part of the Chattahoochee River system.

25.

Heiferhorn Creek, the unnamed tributaries to Heiferhorn Creek, Standing

Boy Creek, and the Chattahoochee River all constitute waters of the State of Georgia for purposes of the Georgia Water Quality Control Act (the "GWQCA"), O.C.G.A. § 12-5-20 *et seq.*, and waters of the United States for purposes of the CWA.

26.

The Old Guard Road Site is approximately 25 acres in size, is being developed as an apartment complex and land-disturbing activities began at the Site in July 2024 during the ownership of Steven W. Corbett and have continued during the ownership of Aspire at Old Guard, LLC.

27.

As rain falls on exposed soils, erosion and sedimentation occurs and results in the discharge of storm water laden with sediment, sand, dirt, rock and other pollutants into nearby waters. As an example, representatives of CRK witnessed the discharge of sediment-laden storm water associated with land-disturbing activities from point sources at the Old Guard Road Site to the unnamed tributaries to Heiferhorn Creek on February 12, 2025, February 4, 2026, February 11, 2026, March 2, 2026, March 5, 2026, and May 7, 2026, and similar discharges of pollutant-laden storm water have occurred, and will continue to occur, each time that it rains.

On or about August 3, 2023, a notice of intent ("NOI") was submitted by Steven W. Corbett on behalf of "Steve Corbett Construction" seeking coverage under the General Permit to discharge storm water from land-disturbing activities from point sources at the Old Guard Road Site.  Upon information and belief, Mr. Corbett used "Steve Corbett Construction" as a d/b/a because there is no legal entity with that name and therefore Mr. Corbett submitted the NOI on behalf of himself individually.

28.

According to Muscogee County property records, "Steve Corbett Construction" has never been the owner of the Site and Steven W. Corbett individually was the owner of the Site from August 5, 2019 until February 19, 2025, when he transferred it to Aspire at Old Guard, LLC.

29.

In the NOIs filed for the Site, Steven W. Corbett is identified as the "Facility/Construction Site Contact" and he has personally directed and supervised the land-disturbing activities at the Old Guard Road Site. Upon information and belief, Mr. Corbett is an officer and/or owner of the Defendants.

30.

As a result of the Defendants' violations of the General Permit, the City of Columbus issued Stop Work Orders for the Old Guard Road Site on or about February 27, 2026 and late April 2026, but the Stop Work Orders have not prevented the ongoing discharges of pollutants in violation of the CWA.

## Count I – Discharge of Pollutants
## in Violation of the CWA, 33 U.S.C. §§ 1311 & 1342

31.

Plaintiff repeats and realleges the allegations contained in the above paragraphs as if set forth fully herein.

32.

As described above, Defendants have discharged, and continue to discharge, pollutants in storm water through point sources into waters of the United States from the Old Guard Road Site.

33.

Part II.B.1.b of the General Permit requires that the owner and operator of a construction site include their "legal name" in the NOI. However, the NOIs for the Old Guard Road Site list "Steve Corbett Construction" as the owner of the Site but there is no legal entity with that name.

11

34.

Therefore, the NOIs submitted for the Old Guard Road Site are invalid and do not otherwise meet the requirements of Part II of the General Permit to obtain authorization to discharge under the Permit.

35.

The Defendants' continuing discharges of pollutants in storm water from point sources at the Old Guard Road Site without a permit violates the CWA, 33 U.S.C. §§ 1311 and 1342.

36.

Further, the CWA makes it unlawful for any person to discharge pollutants from a point source in violation of an NPDES permit. 33 U.S.C. §§ 1311 & 1342.

37.

The Defendants have violated the General Permit in a myriad of ways and each of the following violations have resulted in silt, sediment and other pollutants being discharged to the two unnamed tributaries to Heiferhorn Creek during each and every rain event since the Site was cleared in July 2024, and the violations are continuing to result in the pollution and degradation of Heiferhorn Creek and its unnamed tributaries.

38.

Part II.A.4 of the General Permit requires that, if the owner and/or operator of a construction site changes after a NOI has been filed, the subsequent owner and/or operator must submit a modification NOI in compliance with Part II of the General Permit. On or about February 19, 2025, Mr. Corbett transferred ownership of the Old Guard Road Site to Aspire at Old Guard, LLC, but in violation of Part II.A.4 of the General Permit, a modification NOI has not been filed by Defendants.

39.

The Defendants failed to install functional and adequate sediment basins prior to conducting clearing, grubbing, grading and other land-disturbing activities at the Old Guard Road Site, which violates Parts III.D.2 and IV.D.3 of the General Permit, and constitutes a continuing violation of the Permit for each day on which construction activities occurred and continue to occur at the Site. Such failures include but are not limited to clearing the Site without any of the six temporary sediment storage basins or four permanent basins being installed, the six temporary sediment basins never being installed, and the failure to properly install the four permanent basins in accordance with the approved erosion and sediment control plans for the Site.

13

40.

The Defendants have failed to properly design, install, and maintain adequate erosion control measures, including best management practices ("BMPs"), as required by Parts III.D and IV.D.3 of the General Permit with such BMP failures constituting a continuing violation of the General Permit for each day on which construction activities occurred and continue to occur at the Old Guard Road Site. The BMP deficiencies include but are not limited to the failure to properly design, install, and maintain silt fences (Sd1), inlet protection (Sd2), filter rings (Fr), diversion structures (Di), skimmers (Sk), outlet protection (St), and matting and blankets (Mb).

41.

The Defendants have failed to construct stream crossings in accordance with the approved erosion and sediment control plans for the Old Guard Road Site which constitutes a continuing violation of Part IV of the General Permit for each day on which construction activities occurred and continue to occur at the Old Guard Road Site.

42.

The Defendants have failed to install all of the stormwater drainage piping as shown on the approved erosion and sediment control plans for the current phase

14

of the development of the Old Guard Road Site which failure results in the permanent sediment basins not receiving the intended stormwater flows and the required sediment storage not being provided for the Site in violation of Part IV of the General Permit and which constitutes a continuing violation of the Permit for each day on which construction activities occurred and continue to occur at the Site.

43.

The Defendants have failed to properly stabilize and cover disturbed areas as required by Part IV.D.3 of the General Permit, the GWQCA and the Georgia Erosion and Sedimentation Control Act ("GESCA"), with many disturbed areas left without stabilization for more than 14 days after temporary or permanent ceasing of construction in the particular area, which failures constitute a continuing violation of the Permit for each day on which construction activities occurred and continue to occur at the Site.

44.

Part IV.D.6 of the General Permit requires that Defendants conduct turbidity sampling and monitoring. Defendants have failed to conduct all of the turbidity sampling and monitoring required by Part IV.D.6 of the General Permit.

45.

When Defendants conducted turbidity sampling and monitoring, the results exceeded the limits of the General Permit. Defendants' storm water monitoring results dated November19, 2024, May 29, 2025, and September 25, 2025 document exceedances of the turbidity limits of the General Permit (at p. 19, §§ III.D.4 & 5), and constitute "double" violations of the  General Permit given Defendants' failure to properly design, install, and maintain BMPs on each of those dates.

46.

In addition, Defendants did not report the above storm water monitoring results to EPD until February 5, 2026, which is well outside the timeframe required by Part IV.E of the General Permit and a violation of the General Permit.

47.

When sampling shows an exceedance of the General Permit's turbidity limit and BMPs are not properly designed, installed, or maintained, Part IV.D.6(d)(3) of the General Permit requires the permittee to conduct storm water sampling for each subsequent rain event that reaches or exceeds 0.5 inches. The rainfall data for the Columbus Metropolitan Airport maintained by the National Oceanic and Atmospheric Administration (NOAA) shows that there were no fewer than forty-

16

one days from July 1, 2024 to the present with rainfall events reaching or exceeding 0.5 inches and Defendants have violated the General Permit for each such day on which they failed to conduct the required storm water sampling.

48.

In addition, Defendants have failed to take corrective action as required by Part III.D.6 of the General Permit which constitutes a repeated and continuing violation of the General Permit.

49.

In violation of Part I.C.4 of the General Permit, the sediment-laden runoff from the Old Guard Road Site is further causing and contributing to a violation of Georgia's narrative water quality standards, DNR Rules 391-3-6-03(5)(c) & (d), as incorporated into the General Permit. *See* DNR Rule 391-3-6-03(5)(c) ("All waters shall be free from material related to municipal, industrial or other discharges which produce turbidity, color, odor or other objectionable conditions which interfere with legitimate water uses"); DNR Rule 391-3-6-03(5)(d) ("All waters shall be free from turbidity which results in a substantial visual contrast in a water body due to man-made activity").

50.

Part IV.E of the General Permit requires that Defendants provide monitoring

17

reports to EPD.

51.

Defendants have failed to provide all monitoring reports to EPD in accordance with Part IV.E of the General Permit.

52.

Part IV.D.4 of the General Permit requires that Defendants conduct regular inspections of the Site.

53.

Defendants have failed to conduct inspections of the Site in accordance with Part IV.D.4 of the General Permit.

54.

Defendants have failed to retain records in accordance with Part IV.F of the General Permit.

55.

Part V.A.2 of the General Permit requires that Defendants document and report violations of the General Permit to the EPD.

56.

Defendants have failed to document and report violations of the General Permit to EPD in accordance with Part V.A.2 of the General Permit.

57.

The above-described violations are ongoing and unlawful under the CWA, 33 U.S.C. §§ 1311 and 1342, the GWQCA, and federal and state regulations.

58.

As a result of Defendants' ongoing violations of sections 301 and 402 of the CWA, Defendants are subject to civil penalties of up to $68,445 **per day** for **each** violation.  33 U.S.C. § 1319(d); 40 C.F.R. 19.4.

59.

Substantial and irreparable harm to CRK and its members has occurred and will continue to occur if preliminary and permanent injunctions are not issued requiring Defendants to comply with the provisions of the General Permit.

### Count II – Destruction of Vegetative Stream Buffers in Violation of the CWA, 33 U.S.C. § 1311

60.

CRK repeats and realleges the allegations contained in the above paragraphs as if set forth fully herein.

61.

As part of their land-disturbing activities as the Site, Defendants have destroyed large sections of vegetative buffer on the unnamed tributary to

Heiferhorn Creek that runs through the middle of the Old Guard Road Site (the "Long Unnamed Tributary").

62.

Defendants impacted such stream buffer without obtaining a stream buffer variance from EPD.

63.

The Defendants' destruction of vegetative buffer of the Long Unnamed Tributary without obtaining a stream buffer variance from EPD constitutes a continuing violation of the CWA, 33 U.S.C. § 1311, the GESCA, O.C.G.A. § 12-7-6(b)(15), and the General Permit. *See* General Permit at § IV.(i) ("**no construction activities shall be conducted within a 25 foot buffer along the banks of all state waters**, as measured horizontally from the point where vegetation has been wrested by normal stream flow or wave action, except where the Director has determined to allow a variance that is at least as protective of natural resources and the environment in accordance with the provisions of O.C.G.A. § 12-7-6" (emphasis added)); O.C.G.A. § 12-7-6(b)(15) ("[n]o land-disturbing activities shall be conducted within any such buffer; and a buffer shall remain in its natural, undisturbed state of vegetation until all land-disturbing activities on the site are completed.")

64.

As a result of the Defendants' ongoing violations of section 301 of the CWA, Defendants are subject to civil penalties of up to $68,445 **per day** for **each** violation.  33 U.S.C. § 1319(d); 40 C.F.R. 19.4.

65.

Substantial and irreparable harm to CRK has occurred and will continue to occur if preliminary and permanent injunctions are not issued requiring Defendants to cease destruction of the above-referenced vegetative stream buffer and to repair, restore, and/or mitigate the same.

WHEREFORE, CRK demands a jury trial on all issues triable to a jury, and respectfully requests this Court to grant the following relief:

(a)    Enter a declaratory judgment declaring that Defendants have violated and are in violation of the CWA, 33 U.S.C. §§ 1311 and 1342;

(b)    Issue preliminary and permanent injunctions prohibiting Defendants and any of their agents, employees, successors or assigns from conducting any activities that constitute, continue, or may result in (i) the discharge of rock, sediment, silt, sand or other pollutants into Heiferhorn Creek, the unnamed tributaries to Heiferhorn Creek, Standing Boy Creek, or the Chattahoochee River, or (ii) the

21

destruction of vegetative stream buffers without a stream buffer variance;

(c)     Issue an injunction requiring Defendants to fully restore the Long Unnamed Tributary, remove the silt and sediment deposited in the two unnamed tributaries to Heiferhorn Creek and other waterbodies by Defendants' activities and remediate all damage sustained by Heiferhorn Creek, the unnamed tributaries to Heiferhorn Creek, Standing Boy Creek, and the Chattahoochee River due to the acts and omissions of Defendants;

(d)     Enter a judgment assessing against Defendants a civil penalty in the amount of $68,445 per day for each violation of the CWA pursuant to 33 U.S.C. § 1319(d) and 40 C.F.R. § 19.4.

(e)     Award CRK its costs and expenses of this action including reasonable attorneys' fees, costs and expert witness fees pursuant to the CWA, 33 U.S.C. § 1365(d); and

(f)     Award such additional relief as this Court deems just and proper.

This 16th day of June, 2026.

Respectfully submitted,

SMITH, GAMBRELL & RUSSELL, LLP

/s/ Andrew M. Thompson
Andrew M. Thompson
Georgia Bar No. 707319
Laura Jimenez Garcia
Georgia Bar No. 204355
**Attorneys for Plaintiff Chattahoochee Riverkeeper, Inc.**

1105 W. Peachtree Street NE
Suite 1000
Atlanta, Georgia 30309
Telephone: (404) 815-3500
Facsimile: (404) 685-7001
athompson@sgrlaw.com
ljimenezgarcia@sgrlaw.com

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF GEORGIA**
**COLUMBUS DIVISION**

| | |
|---|---|
| CHATTAHOOCHEE RIVERKEEPER, INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil Action File No. ) 4:26-cv-00855-CDL |
| ASPIRE AT OLD GUARD, LLC; SCORUSA, LLC; and STEVEN W. CORBETT, | ) ) ) ) |
| Defendants. | ) ) |

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing **FIRST AMENDED COMPLAINT AND PETITION FOR INJUNCTIVE RELIEF** was served this day via the Court's CM/ECF filing platform which will provide notice to all counsel of record.

This 16th day of June, 2026.

/s/ *Andrew M. Thompson*
*Attorneys for Plaintiff Chattahoochee Riverkeeper, Inc.*

24